**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **MR. MEAT & GOODS CORP.** ) | |
| 6795 Three Fountains Way ) | |
| Canal Winchester, Ohio 43110, ) | |
| ) | |
| *Plaintiff*, ) | Case No. |
| ) | |
| *v.* ) | |
| ) | Judge |
| **PSSI STADIUM LLC** ) | |
| 3400 South Water Street ) | |
| Pittsburgh, Pennsylvania 15203, ) | |
| ) | JURY DEMAND |
| *Defendant.* ) | ENDORSED HEREON |
| ) | |
| *Also serve at:* ) | |
| ) | |
| BUCHANAN INGERSOLL ROONEY ) | |
| c/o BRIAN H. SIMMONS ) | |
| Union Trust Building ) | |
| 501 Grant Street, Suite 200 ) | |
| Pittsburg, Pennsylvania 15219 ) | |

## <u>COMPLAINT</u>

This action arises out of Defendant's breach of a certain Agreement for Sponsorship and Promotion (the "Agreement") that was entered into between the parties for the 2021, 2022, and 2023 Heinz Field Kickoff & Rib Festival (the "Festival"). The Agreement stipulated that Plaintiff was to be the exclusive meat provider for the event such that all prospective vendors were to purchase rib and other meat from Plaintiff and would not be permitted to obtain meat from other sources. Plaintiff paid Defendant substantial monies for this business opportunity. Defendant breached the Agreement by freely permitting vendors to purchase meat from other sources.

## THE PARTIES

1.      Plaintiff, Mr. Meat & Goods Corporation ("Mr. Meat"), is an Ohio corporation located in Canal Winchester, Ohio having a statutory agent address of 6795 Three Fountains Way, Canal Winchester, Ohio 43110.  Mr. Meat is a successful secondary market provider of meat and related products to vendors frequently participating in rib and barbeque festivals throughout the Midwest.  Mr. Meat is wholly owned by Bradley Kean, an individual residing in Canal Winchester, Ohio.

2.      Defendant, PSSI Stadium LLC ("PSSI"), is a Pennsylvania limited liability company with a principal place of business located at 900 Art Rooney Avenue, Pittsburg, Pennsylvania 15212 and having a statutory agent address of 3400 South Water Street, Pittsburgh, Pennsylvania 15203.  On information and belief, PSSI and all its subsidiaries, if any, are wholly citizens of Pennsylvania.  PSSI is the tenant and operator of the football stadium located in the North Shore area of Pittsburgh, Pennsylvania known as Heinz Field.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction in this matter pursuant to 28 U.S.C. §1332(a)(1) (diversity jurisdiction) because this case is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

4.      Venue is proper in the Southern District of Ohio, Eastern Division, pursuant to 28 U.S.C. §1391(b)(2) insofar as a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Ohio.  Mr. Meat negotiated and entered into the Agreement in the Southern District of Ohio, and it ordered rib and other meat pursuant to the Agreement, and it provided logistical support pursuant to the Agreement from the Southern District of Ohio.

## BACKGROUND INFORMATION AND FACTS

5.      The parties entered into the Agreement on or about June 4, 2021, and was to cover a period of three years, including 2021, 2022, and 2023.  The Agreement related to the annual Heinz Field Kickoff & Rib Festival during the month of September.  A copy of the Agreement is attached here as **Exhibit A**.  The Agreement stipulated that Plaintiff was to be the exclusive meat provider for the Festival such that all prospective vendors were to purchase rib and other meat only from Plaintiff and would not be permitted to obtain meat from other sources.

6.      The Agreement contemplated a three-party relationship and supply chain between and among Mr. Meat, PSSI, and various vendors who would provide rib-related finished meals to the general public at the Festival (the "Vendors").  Each party's obligations were as follows:

a.  Mr. Meat was responsible for the purchase of meat products from meat producers in quantities sufficient to meet the demand of the Vendors at the Festival.  To meet the anticipated demand, Mr. Meat was required to pre-order meat from its meat producers and keep this product in cold storage until the Festival.  These meat pre-orders were made months before the Festival, and the meat was subsequently delivered to the Festival and made available to the Vendors.

b.  PSSI was responsible for entering into agreements with the Vendors and requiring them to only purchase meat and related products from Mr. Meat, pursuant to Exhibit A, Section (a) of the Agreement (**Exhibit A**).  Enforcement of this requirement was unambiguously on PSSI, as Mr. Meat has no direct agreement with the Vendors.  A copy of these vendor agreements ("Vendor Agreement") is attached here as **Exhibit B**.  PSSI made these promises both through the Agreement and through direct conversations with agents and representatives of PSSI and Mr. Meat.

c.  Vendors were responsible for purchasing all their meat and related products from Mr. Meat.  Pursuant to Section 21 of the Vendor Agreement, each prospective vendor agreed that "[t]he official meat provider for the Miller Lite Kickoff and Music Festival is BLK Ventures LLC.  The contact person to purchase your product from is Bradley Kean.  His phone number is (614) 206-7144 and email is keanbradley@yahoo.com."  (BLK Ventures LLC assigned its interest in the Agreement to Mr. Meat).

7.      Mr. Meat paid or otherwise agreed to pay PSI substantial monies for this business opportunity, insofar as the Agreement stipulated a total of $52,000.00 in payments from Mr. Meat to PSSI.  **Exhibit A**, Agreement, Section 3(A) – (D).

8.      If PSSI were to allow vendors to obtain rib and other meat products from sources other than Mr. Meat, such conduct would defeat the purpose of the Agreement and would deprive Mr. Meat of the benefit of the bargain.

9.      PSSI breached the Agreement by freely permitting numerous vendors to purchase meat from other sources or otherwise bring their own meat to the Festival, entirely bypassing Mr. Meat from the agreed-upon supply chain.

10.     Pursuant to the Agreement, Mr. Meat pre-ordered meat and related products from its meat producer and had it available for the 2021 and 2022 September Festival.  Because PSSI freely permitted vendors to purchase meat from other sources or otherwise bring their own meat to the Festival, such vendors did not purchase meat and related products from Mr. Meat, leaving Mr. Meat with a substantial surplus of unsold meat.  Mr. Meat was nonetheless still required to purchase this unsold meat from its meat producer, leading Mr. Meat to incur substantial damages in an amount exceeding $75,000.00, exclusive of interest and costs.

## COUNT ONE:  BREACH OF CONTRACT
### (Violation of Benefit of Exclusive Meat Provider Provision)

11.     Mr. Meat repeats and realleges the allegations set forth above as if fully restated herein.

12.     Mr. Meat and PSSI entered into the Agreement on or about June 4, 2021, and was to cover a period of three years, including 2021, 2022, and 2023, and related to the annual Heinz Field Kickoff & Rib Festival during the month of September.  The Agreement stipulated that Plaintiff was to be the exclusive meat provider for the Festival such that all prospective vendors

were to purchase rib and other meat only from Plaintiff and would not be permitted to obtain meat from other sources.

13.    Mr. Meat provided meat and related products to the Vendors for the 2021 and 2022 Festival pursuant to the Agreement.

14.    PSSI's conduct, by freely permitting numerous vendors to purchase meat from other sources or otherwise bring their own meat to the Festival, entirely bypassing Plaintiff from the agreed-upon supply chain, is in direct violation of the Agreement and amounts to a breach of the Agreement.

15.    As a result of PSSI's breach of the Agreement, Mr. Meat has been damaged in an amount to be determined at trial, but in excess of $75,000.00, exclusive of interest and costs.

## COUNT TWO:  PROMISSORY ESTOPPEL

16.    Mr. Meat repeats and realleges the allegations set forth above as if fully restated herein.

17.    Pursuant to the Agreement and representations made by agents and representatives of PSSI, PSSI made a clear and unambiguous promise that it would be responsible for entering into and enforcing agreements with the Vendors requiring them to only purchase meat and related products from Mr. Meat.

18.    Mr. Meat acted in good faith and justifiably relied on PSSI's promises (both through the Agreement and in discussions with agents and representatives of PSSI) regarding the enforcement of the Vendors' requirement to purchase meat and related products from Mr. Meat. Mr. Meat also justifiably relied on PSSI's promises regarding the locating, ordering, purchasing, storing, delivering, and being prepared to provide to the Vendors the substantial amount of meat that was needed for the Festival.

19.    Mr. Meat's reliance on PSSI's promises was both reasonable and foreseeable.

20.     As a result of PSSI's actions of reneging on its promises, Mr. Meat has been damaged in an amount to be determined at trial, but in excess of $75,000.00, exclusive of interest and costs.

### COUNT THREE:  BREACH OF CONTRACT
### (Disclosure of Confidential Information)

21.     Mr. Meat repeats and realleges the allegations set forth above as if fully restated herein.

22.     Pursuant to Section 13 of the Agreement, PSSI acknowledged that the terms and conditions in the Agreement were "strictly confidential and shall not be divulged or disclosed to any third party during the Performance Period . . ."  **Exhibit A**, Agreement, Section 13.

23.     On information and belief, PSSI engaged with third parties and disclosed to such third parties confidential information in the Agreement.

24.     As a result of PSSI's breach of the Agreement, Mr. Meat has been damaged in an amount to be determined at trial, but in excess of $75,000.00, exclusive of interest and costs.

**WHEREFORE**, Plaintiff under all counts of the Complaint requests the Entry of Judgment for the following relief:

A.     Award Plaintiff compensatory and punitive damages in an amount in excess of $75,000, exclusive of interest and costs;

B.     Award Plaintiff its attorneys' fees and costs to prosecute this action; and

C.     Award such other and further relief as may be just and proper.

Respectfully submitted,

/s/ Istvan Gajary
GREGORY S. PETERSON (0061915)
ISTVAN GAJARY (0089084)
PETERSON CONNERS LLP
545 Metro Place South, Suite 435

Dublin, Ohio 43017
(614) 365-7000
(614) 220-0197 (Facsimile)
gpeterson@petersonconners.com
igajary@petersonconners.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues triable under law.

/s/ Istvan Gajary
ISTVAN GAJARY

## AGREEMENT FOR SPONSORSHIP AND PROMOTION

THIS AGREEMENT is entered into on June 4, 2021, and effective on and as of June 4, 2021 (the "**Effective Date**"), by and between **BLK VENTURES LLC**, with an office at the address set forth below ("**Sponsor**"), and **PSSI STADIUM LLC**, a Pennsylvania limited liability company ("**PSSI**"), with an office at 900 Art Rooney Avenue, Pittsburgh, Pennsylvania 15212-5557.

WHEREAS, PSSI is the tenant and operator of the football stadium (for sports and other entertainment) located in the North Shore area of Pittsburgh, Pennsylvania known as Heinz Field (the "**Stadium**") and has the right, power and authority to grant marketing and promotional rights with respect to the Stadium; and

WHEREAS, Sponsor desires to promote and advertise its business with PSSI at the Stadium and to receive certain sponsorship benefits from PSSI; and

WHEREAS, Sponsor and PSSI desire to enter into an agreement under which PSSI will provide promotional and other benefits to Sponsor in exchange for sponsorship fees and other consideration;

NOW, THEREFORE, Sponsor and PSSI, intending to be legally bound hereby, agree as follows:

**1.    Performance Period**

This Agreement is entered into by Sponsor and PSSI with respect to the period commencing on the Effective Date and ending on October 1, 2023, inclusive (the "**Performance Period**").

**2.    Advertising, Promotions and Benefits**

(A)    Subject to Sponsor's performance of its obligations hereunder, PSSI will provide Sponsor with the advertisements, promotions and benefits specified on **Exhibit A**, which is attached to and incorporated into this Agreement, (collectively, the "**Benefits**" and individually, a "**Benefit**") under the terms and conditions specified in this Agreement and in **Exhibit A**.

(B)    All Benefits will be subject to all rules and regulations implemented by PSSI and all applicable federal, state and local laws, rules and regulations (collectively, "**Rules and Regulations**").

(C)    PSSI's provisions of the Benefits are non-exclusive unless expressly provided otherwise.

(D)    **Sponsor acknowledges that the availability of certain advertisements and promotions for the Benefits set forth on Exhibit A are limited due to the date that this Agreement is entered into by the parties.**

**Exhibit A**

3. **Sponsorship Consideration**

(A)     In consideration for the Benefits and other rights granted to Sponsor under this Agreement, Sponsor agrees to a three year commitment (2021, 2022, 2023) in which sponsor shall pay to PSSI (at its address stated herein) a cash sponsorship fee in the below aggregate amounts (the "**Sponsorship Fee**") per year for the Kickoff and Rib Festival. The Sponsorship Fee shall be paid in immediately available funds, in full, within thirty (30) days of Sponsor's receipt of an invoice from PSSI.

(B)     2021: $15,000

(C)     2022: $17,500

(D)     2023: $20,000

(E)     PSSI will invoice Sponsor for each payment due under this Agreement.

4. **Production and Approval of Promotional Materials; Certain Restrictions**

(A)     With respect to each Benefit that includes material to be broadcast, published, distributed or displayed, Sponsor shall prepare and produce such material, at Sponsor's sole expense (unless otherwise specified in the attached Exhibits), in final form or such form that reasonably approximates the anticipated final form of such Benefit advertisement (such as story boards, prototypes, etc.) and shall provide such material to PSSI at least thirty (30) days (or such shorter period as PSSI and Sponsor may mutually agree) prior to the first date on which such Benefit advertisement is to be broadcast, published, distributed or displayed hereunder. The form, content and presentation of each Benefit advertisement shall be subject to the approval of PSSI and to all applicable Rules and Regulations. PSSI shall notify Sponsor of its approval or rejection of all or part of the proposed Benefit advertisement within ten (10) days after PSSI's receipt of Sponsor's submission thereof.

(B)     Unless specifically approved by PSSI in writing, Sponsor shall not include in any Benefit or in any type of promotional material under this Agreement any advertisement for, or other reference to, (i) any product or service that is not a product or service of Sponsor, or (ii) any product or service that competes with any product or service of any other person that is then a sponsor of or a purchaser of advertising from PSSI and to whom PSSI has granted exclusive rights with respect to the category of the subject product or service (PSSI will give notice of such a conflict should it arise, provided that PSSI discloses to Sponsor prior to the Effective Date of this Agreement those persons to whom PSSI has granted such exclusive rights), or (iii) any product or service prohibited by PSSI for advertising purposes and disclosed to Sponsor.

(C)     Sponsor represents, warrants and covenants that the use (as approved by Sponsor) of any content or materials prepared or provided by Sponsor for any Benefit advertising under this Agreement does not and will not infringe any copyright, trademark, right of privacy or any other right of any third party and that Sponsor has all necessary rights for the use of such content and materials in connection with the subject Benefit advertisement as contemplated in this Agreement.

(D)    PSSI represents, warrants and covenants that the use (as approved by PSSI) of any content or materials prepared or provided by it for any Benefit advertising under this Agreement does not and will not infringe any copyright, trademark, right of privacy or any other right of any third party and that PSSI has all necessary rights for the use of such content and materials in connection with the subject Benefit advertisement as contemplated in this Agreement.

(E)    For the Term of this Agreement, Sponsor grants to PSSI, for the Performance Period, a non-exclusive, royalty-free, limited license to use the names, service marks, logos and/or trademarks of Sponsor or any of its affiliated companies as designated by Sponsor (the "**Sponsor Marks**") solely for the purpose of providing applicable Benefits. PSSI's use of Sponsor Marks shall be limited to providing the applicable Benefits. PSSI shall not use a Sponsor Mark in any manner without Sponsor's prior approval of the use.

## 5.    Substitution/Credit for Unavailable Benefits

Sponsor and PSSI acknowledge and agree that, due to circumstances (foreseeable or unforeseeable) beyond the reasonable control of Sponsor or PSSI, or due to the future implementation of Rules and Regulations, it may be or become impossible or impracticable to provide all or part of any one or more Benefits under this Agreement (each an "**Unavailable Item**"). With respect to any Unavailable Item, PSSI shall provide Sponsor, at PSSI's sole option, in lieu of such Unavailable Item, (i) one or more different promotions, advertisements or benefits of at least equal value to the portion of the Unavailable Item not received; or (ii) a cash payment equal to the value of the portion of the Unavailable Item not received, and Sponsor must agree to the cash payment amount, which agreement will not be unreasonably withheld. By doing so, PSSI will satisfy all of its obligations with respect to the Unavailable Item.

## 6.    Indemnification; Insurance

(A)    Each party shall indemnify, defend and hold harmless the other party and its officers, directors, agents and employees (collectively, the "**Indemnified Parties**") from and against any and all claims, damages and liabilities (inclusive of contractual liabilities), including, without limitation, reasonable attorneys' fees and other expenses of defense (collectively "**Losses**") incurred by any Indemnified Party to the extent such Losses are caused by, arise out of or result from the indemnifying party's performance under this Agreement or any breach of any representation, warranty or obligation of the indemnifying party contained in this Agreement. However, neither party shall be liable for any special, consequential, or punitive damages or any damages resulting from lost profits, except to the extent that such damages are awarded to a third party with respect to a matter subject to indemnity hereunder. The Indemnified Party shall give the other party prompt written notice of any claim or suit to which the indemnity set forth in this paragraph applies. The indemnifying party agrees to defend all actions to which such indemnity applies and to conduct the defense thereof at its expense and by qualified counsel, which counsel shall be reasonably satisfactory to the other party, provided however, that the Indemnified Party shall retain the right to deal with any action hereunder by employing its own counsel. The indemnity obligations as set out herein shall survive the expiration or earlier termination of this Agreement.

(B)    Sponsor shall indemnify, defend, and hold harmless the PSSI Parties (as defined below) as well as their respective officers, directors, agents and employees for, from and against

any Losses for trademark infringement arising out of PSSI's use of the Sponsor Marks as authorized under this Agreement.

(C)     Sponsor shall maintain insurance coverages and policies, in at least the amounts, set forth on Schedule 1 attached hereto and incorporated herein. Such insurance shall provide coverage against all claims against PSSI, Pittsburgh Steelers LLC ("**Steelers**"), North Shore Entertainment Works ("**NSEW**"), the Sports & Exhibition Authority of Pittsburgh and Allegheny County (the "**Authority**"), the City of Pittsburgh (the "**City**"), Allegheny County (the "**County**"), Allegheny Regional Asset District ("**RAD**"), the Stadium Authority of the City of Pittsburgh (the "**Stadium Authority**") (collectively, the "**PSSI Parties**") for bodily injury (including death) and property damage resulting directly or indirectly from any act, omission or activities of Sponsor or any person acting for Sponsor or under their respective control or direction in each case. Such insurance shall be with a company or companies approved in writing by PSSI, which approval will not be unreasonably withheld. All of the foregoing insurance coverages shall be obtained by Sponsor as primary insurance and shall name PSSI, Steelers, NSEW, the Authority, the City, the County, RAD and the Stadium Authority as additional insureds. Sponsor shall deliver to PSSI certificates evidencing insurance in compliance with this Section prior to commencing any activities pursuant to this Agreement. Except as caused by the gross negligence or willful misconduct of a PSSI Party, Sponsor waives and releases PSSI Parties from any and all liabilities, claims and losses on account of damage to Sponsor's personal property.

(D)     PSSI shall maintain such insurance as is commercially reasonable for its industry and operations.

(E)     The indemnity obligations as set out herein shall survive the expiration or earlier termination of this Agreement.

## 7.     General Conduct

Each party covenants to the others that at all times during the term of this Agreement the party shall conduct itself with due regard to social conventions and decency, and that such party will not commit any act or become involved in any situations or occurrences which in the other party's reasonable judgment degrades the other party in society, or which brings the other party into public disrepute, contempt, scandal or ridicule or which shocks, insults or offends the community or reflects unfavorably upon any of the parties.

## 8.     Termination; Remedies

(A)     Without limiting in any way the right of any party to this Agreement to seek monetary damages or other legal, equitable or injunctive relief in the event of any breach of this Agreement, if either party (a) materially breaches this Agreement and (b) fails to cure such breach within ten (10) days for any monetary breach or within thirty (30) days for any other breach after receipt of written notice of breach from the other party, then the party giving such notice of the breach may terminate this Agreement by written notice of termination.

In addition to the foregoing rights of termination, this Agreement may be terminated by either party prior to the expiration of the Performance Period by written notice to the other party in the event that the other party (1) makes an assignment for the benefit of

creditors, or petitions or applies to any tribunal for the appointment of a custodian, receiver or trustee for all or a substantial part of its assets, (2) commences any proceeding under any bankruptcy, reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction whether now or hereafter in effect, (3) has any such petition or application filed or any such proceeding commenced against it in which an order for relief is entered or an adjudication or appointment is made, and which remains undismissed for a period of 60 days or more, (4) takes any corporate action indicating its consent to, approval of or acquiescence in any such petition, application, proceeding or order for relief or the appointment of a custodian, receiver or trustee for all or substantial part of its assets, or (5) permits any such custodianship, receivership or trusteeship to continue undischarged for a period of 60 days.

(B)     If a notice of termination is given in accordance with Section 8(A) above, the party giving notice of termination shall thereafter have no obligation under this Agreement except to make payments which are due as of the date of termination and, on a pro-rata basis, any payment due after the date of notice of termination for which Benefits have been provided prior to actual termination, the amount of the Sponsorship Fee being due shall be pro-rated for each individual Benefit, as applicable, based upon the portion of the Benefit received compared to the portion not received as of the date of the termination. Additionally, if at the time of termination PSSI has been paid Sponsorship Fees in excess of the Benefits already delivered or committed to Sponsor as of the date of termination, then PSSI shall remit to Sponsor within thirty (30) days after such termination, all such overpayment. If the termination is a result of a breach, then the non-breaching party shall be entitled to receive payment of all costs, expenses and losses incurred by the non-breaching party as a direct result of such breach and termination.

(C)     Each party recognizes that the covenants of such party under Section 13 of this Agreement are special, unique and of extraordinary character. Accordingly, in addition to any other rights and remedies that the non-breaching party may have in the event of any breach of Section 13 of this Agreement by the breaching party, the non-breaching party shall be entitled, and hereby is expressly and irrevocably authorized by the breaching party, inter alia, to seek temporary and permanent injunctive relief, and all other equitable relief against the breaching party in order to enforce against the breaching party, or in order to prevent any breach or threatened breach by the breaching party of, the covenants and agreements contained in Section 13 of this Agreement. In case of any breach of Section 13 of this Agreement by the breaching party, nothing herein contained shall be construed to prevent the non-breaching party from seeking such other remedy in the courts as it may elect or invoke.

(D)     Except as specifically provided in this Agreement in no event shall any party be liable to another party for any indirect, special or consequential damages of any nature whatsoever related to the subject matter of this Agreement including, but not limited to, loss of profits, sustained or allegedly sustained by such other party. The parties acknowledge that any limitation of liability will in no way affect either party's right to seek appropriate relief at law arising from or incident to any death, personal injury or property damage which is in any way connected to the other's negligence, willful misconduct or strict liability in tort with respect to the subject matter of this Agreement.

9.     Entire Agreement; Amendment

This Agreement constitutes the entire agreement and understanding between the parties and supersedes all prior agreements and understandings relating to the subject matter of this

Agreement. None of the provisions of the Agreement can be waived or modified except expressly in writing signed by all parties and there are no representations, promises, agreements, warranties, covenants, or undertakings other than those contained herein. Those provisions which by their nature are intended to survive the expiration or termination of this Agreement, including by way of example only, Indemnification and Confidentiality provisions, shall survive the expiration or termination of this Agreement. This Agreement may be amended or supplemented only by a writing signed by both Sponsor and PSSI.

### 10. Governing Law

This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without giving effect to principles of conflict of laws. Any dispute related to or arising out of this Agreement will be brought solely in a federal or state court located in Allegheny County, Pennsylvania. Sponsor and PSSI agree to the jurisdiction of such courts and hereby consent to the personal jurisdiction of such courts.

### 11. Assignment

(A)     Sponsor's interest in this Agreement, may be assigned or transferred to any corporation which controls, is controlled by or is under common control with Sponsor, or to any corporation resulting from the merger, re-organization or consolidation with Sponsor, or to any corporation which becomes the successor to substantially all of Sponsor's assets, and upon the express assumption by such successor of all of the liabilities of Sponsor, such successor shall thereupon become and be a party under this Agreement. Sponsor will provide PSSI with written notice of any such assignment or transfer immediately upon completion of such action.

(B)     The rights and obligations of PSSI hereunder may be assigned to any successor of PSSI's right, title and interest in and to the Stadium and such successor specifically assumes in writing all obligations of PSSI hereunder.

### 12. No Waiver

No failure of any party to give notice of or seek a remedy for any violation of this Agreement or to insist on strict performance hereunder shall reduce, impair or affect such party's right to later seek such remedy or insist on such performance with respect to the same or any other violation or failure, regardless of such party's knowledge or lack of knowledge thereof.

### 13. Confidentiality

The parties acknowledge that the terms and conditions, in particular the financial details of, and any information disclosed in connection with, this Agreement are strictly confidential and shall not be divulged or disclosed to any third party during the Performance Period or after the expiration or the early termination of this Agreement without the prior written consent of the other party, and agree to do all things necessary to preserve their confidentiality, except to the extent that: (a) disclosure is required by relevant laws or court orders; (b) the contents or information is in the public domain; (c) the contents or information was already known to the receiving party without the obligation of confidentiality; or (d) the contents or information is disclosed to the receiving party by a third party that has the right to make such disclosure. The confidentiality obligations of the parties as set out herein survive the expiration or the earlier

6

termination of this Agreement. Notwithstanding the foregoing, either party may disclose the terms hereof to such party's professional advisors provided such persons or firms are bound by agreement not to further disclose such information to any third party.

## 14. Relationship of the Parties

The relationship of Sponsor and PSSI hereunder shall be solely that of independent contractors and nothing herein shall be construed to create or imply any relationship of employment, agency, partnership or any relationship other than that of independent contractors. Sponsor and PSSI acknowledge and agree that each of them is engaged in a separate and independent business and neither shall state, represent or imply any interest in or control over the business of the other.

## 15. Mutual Representation

Each party hereto represents and warrants that it has the full right, power and legal authority to enter into and fully perform this Agreement in accordance with its terms and the execution, delivery, and performance of this Agreement does not and will not violate or cause a breach of any other agreements or obligations to which such party is party and no approval or other action by any other person, governmental authority or agency is required in connection herewith.

## 16. Notices

All notices and other communications provided for hereunder shall be in writing and shall be deemed effective only if and when delivered by hand, mailed or prepaid certified United States mail (return receipt requested) or delivered by overnight courier service, addressed as follows:

| If to Sponsor: | If to PSSI: |
|---|---|
| BLK Ventures LLC<br>6795 Three Fountains Way<br>Canal Winchester, OH 43110<br>Attn: Bradley L. Keane<br>President | PSSI Stadium LLC<br>900 Art Rooney Avenue<br>Pittsburgh, PA 15212<br>Attn: Marketing Director |
| With a copy to: | With a copy to: |
| BLK Ventures LLC<br>6795 Three Fountains Way<br>Canal Winchester, OH 43110<br>Attn: Legal Department | Buchanan Ingersoll & Rooney PC<br>20th Floor, One Oxford Centre<br>Pittsburgh, PA 15219<br>Attn: John A. Barbour, Esq. |

## 17. Force Majeure

If PSSI, for any reason beyond its reasonable control, such as an act or threat of terrorism, war, emergency, act of God, work stoppage, or other similar event, is not able to

provide the Benefits, it is agreed that such non-performance shall not be a default and the provisions in Section 5 regarding Unavailable Items shall control.

## 18. Counterparts

This Agreement may be executed in multiple counterparts, each of which may be transmitted by facsimile or electronic mail and each of which shall be deemed an original, but all of which, when taken together, shall constitute one and the same instrument.

IN WITNESS WHEREOF, and intending to be legally bound hereby, the parties have executed this Agreement on the date first written above.

**BLK VENTURES LLC**

By: _Bradley R. Kean_

Name: _Bradley R. Kean_

Title: _Owner – 100%_

_20 June, 2021_

**PSSI STADIUM LLC**

By: _[signature]_

Name: _James V. Sacco_

Title: _VP OPS & MGT_

## EXHIBIT A

## PROMOTIONS

**SPONSOR SHALL NOT SELL OR BARTER TICKETS/PASSES REFERENCED IN THIS EXHIBIT A OR USE SUCH TICKETS/PASSES IN A PROMOTIONAL MANNER (E.G., CONSUMER TICKET GIVE-AWAY) WITHOUT THE PRIOR WRITTEN APPROVAL OF PSSI.**

### KICKOFF & RIB FESTIVAL

Sponsor will be recognized as an associate level sponsor of the 2021, 2022 & 2023 Heinz Field Kickoff & Rib Festival, a multiple-day event over a weekend (the "Event"). As an associate level sponsor, Sponsor will receive the following:

(a) The exclusive meat provider for the Event, and the only food provider allowed on site at the Event to service the food product needs for all of the rib vendors;

(b) To the extent available on and after the Effective Date, recognition via name and/or logo (i) in PSSI-controlled television and newspaper media promoting the Event, (ii) in PSSI-controlled press releases for the Event, (iii) in email blasts by PSSI for the Event, (iv) in advertisements for the Event on the Heinz Field Rib Fest website, and (v) in a promotional mention of the Event on the Daktronics main scoreboards at the Stadium during any applicable and corresponding events during which the event is promoted in full form advertisements that can accommodate associate sponsors

(c) the opportunity to have at the Event Sponsor's name and logo on banner displays on the Southeast and Southwest Rotundas at the Stadium (the exact size, content and location of the banners being subject to PSSI's reasonable discretion);

(d) the opportunity to have on-site space (approximately 10' by 10') outside the Stadium for a booth for a display, sales activities, distribution of product and/or coupons, which booth may display Sponsor's name and/or logo; and

(e) wristbands limited to six (6) per day of the Event at PSSI's reasonable discretion, granting access to the Festival's VIP tent; PSSI may agree to issue additional wristbands at Sponsor's request and based on availability.

The location of the on-site space, the location, size and content of any banner at the booth, any materials or products to be displayed or distributed, and any activities at the site must be approved by PSSI in its reasonable discretion. Sponsor shall be responsible for all distributions and activities complying with applicable laws, rules, regulations and established guidelines.

## SCHEDULE 1

### SPONSOR'S INSURANCE COVERAGES

Sponsor must have the following insurance coverages (with at least the limits listed) in place:

| General Liability | | |
|---|---|---|
| | | |
| Limits: | $1,000,000 | Each Occurrence |
| | $2,000,000 | General Aggregate per Location |
| | $2,000,000 | Products and Completed Operations Aggregate |
| | $1,000,000 | Personal Injury and Advertising Injury |
| | $100,000 | Damages to Rented Premises |
| | | |
| **Workers Compensation** | | |
| | | |
| Coverage: | Statutory Limits | |
| | $500,000 | Each Accident |
| | $500,000 | Disease Policy Limit |
| | $500,000 | Disease Each Employee |
| | | |
| **Umbrella** | | |
| | | |
| Limits: | $2,000,000 | Aggregate |
| | $2,000,000 | Per Occurrence |
| | | |
| **Automobile Coverages** | | |
| | | |
| Limits: | $1,000,000 | Liability (Combined Single Limit) |

| Each of the entities involved should produce a certificate of insurance and name PSSI Stadium LLC, North Shore Entertainment Works LLC, Pittsburgh Steelers LLC, the Sports & Exhibition Authority of Pittsburgh and Allegheny County, the City of Pittsburgh, the County of Allegheny, Allegheny Regional Asset District and the Stadium Authority of the City of Pittsburgh as additional insureds. |
|---|

# 2022 MILLER LITE KICKOFF & RIB FESTIVAL - RIB VENDOR GUIDELINES

1. **General Event Information:**
   - **Set up:**
     - Tuesday, August 30, 2022
     - Wednesday, August 31, 202
   - **Event:**
     - Thursday, September 1, 2022 – 12:00 Noon – 9:00 pm
     - Friday, September 2, 2022 – 12:00 Noon – 11:00 pm
     - Saturday, September 3, 2022 – 12:00 Noon – 11:00 pm
     - Sunday, September 4, 2022 – 12:00 Noon – 11:00 pm
     - Monday, September 5, 2022 – 12:00 Noon – 8:00 pm
   - Teardown – Post-event Monday, September 5, 2022, and everything needs to be gone by 8:00 am on Tuesday, September 6, 2022.

2. **Booth Locations:**
   - Layout of the event, including vendor locations, is at the sole discretion of PSSI Stadium LLC and is subject to many factors including assisting with crowd spacing and booth requirements. There is no guarantee of vending location from year to year, either stated or implied, and no space shall be sublet.

3. **Health Permits and Licenses:**
   - In order to participate in the Miller Lite Kickoff & Music Festival, you must obtain a permit from the Allegheny County Health Department.
   - The following link must be used to apply for your permit at least 30 days prior to the event. Without a health department permit, you ***will not*** be able to participate in our festival. https://www.alleghenycounty.us/Health-Department/Programs/Food-Safety/Temporary-and-Seasonal-Food-Facilities-and-Events.aspx
   - The Allegheny County Health Department will make periodic checks of your areas throughout the event to be sure you are operating according to their standards and regulations. If violations are found, they can close down your operation until you comply with health standards.

4. **Set-Up:**
   - Rob Thompson or Greg Hoyer will set the rib vendors load-in schedule. Your rib team must contact Rob or Greg to get your time slot for load-in. Please be prompt with your scheduled time, as there are other people coming to load in around your designated time.

5. **Load Out:**
   - PSSI Stadium LLC reserves the right to determine the clean-up appropriateness of your booth area.
   - Vendors are responsible for their area and must leave their rented space clean at the conclusion of the Kickoff Festival.
   - Before leaving the property, your area must be clear of items brought in by the vendor, not limited to cookers, smokers, trailers, vehicles, tents, etc.
   - All items for each vendor booth must be completely removed from the festival site by 8:00 am on Tuesday, September 6, 2022.

**Exhibit B**

6. <u>Grease / Charcoal Ash Disposal:</u>
   - Separate grease and charcoal ash disposal containers will be available; however, you are responsible for getting the grease/ash from your booth to these designated containers.
   - Grease and ash <u>**CANNOT**</u> be dumped into sewer grates, dumpsters or any other non-appropriate container.

7. <u>Booth Area / Trash Removal:</u>
   - All vendors are required to provide & install protective, non-flammable material underneath all set-up equipment, covering the street <u>**and**</u> sidewalk for the entire area of allotted booth space. This material must be maintained throughout the course of the festival.
   - All vendor booths must always remain clean and neat. PSSI Stadium LLC asks that you do not allow trash to build up in booth areas.
   - All cardboard boxes must be broken down before putting them into the dumpsters, to ensure more items can be discarded before the dumpster fills up.

8. <u>Rain Date / Refunds:</u>
   - There is no rain date for the event and no refunds due to weather conditions.

9. <u>Booth Music:</u>
   - PSSI Stadium LLC reserves the right to control the content and volume level of any and all music/broadcasting from your rented booth space. If deemed objectionable, it can result in removal from the current festival and all future festivals at Heinz Field.
   - We are a family orientated event in which music and/or announcements from your booth must reflect that.

10. <u>Vending Rules:</u>
   - <u>Signage:</u>
     - Vendors are responsible for providing signage identifying their booth, food items and prices. Signage must be clean, attractive and properly installed for safety and able to withstand high winds and other weather conditions. No hand-written signs will be permitted.
   - <u>Souvenir Items:</u>
     - Food vendors may not sell any merchandise (non-food items) without prior approval of PSSI Stadium LLC and no one may use the event mark or logo for any purpose without prior approval.

11. <u>Menu Items:</u>
   - All vendors <u>**may not**</u> sell the following beverages of any type: water, soda and alcohol.

12. <u>Rib Judging:</u>
   - Rib judging will take place at some point throughout the length of the festival and trophies will be awarded for the following categories: Best Ribs, Best Sauce and People's Choice.
   - As the judging assistants come to your booth to collect your judging submission, you must provide the required items immediately. If your product is not produced immediately, your product will be excluded from judging.

13. <u>Site Security:</u>
   - PSSI Stadium LLC will provide overnight and crowd control security for the site.  PSSI Stadium LLC and the producers of the event do not assume any liability for vendor's property.

14. <u>Electrical Services:</u>
   - Each vendor will be provided all 110v and (1) 220 connection, included with the rental fee.
     - Additional electrical services or repair work must be contracted in advance and paid to PSSI Stadium LLC management at the time the service/repair is provided.
   - Participants are responsible for providing all necessary electrical cables and GFI's.

15. <u>Water Service:</u>
   - PSSI Stadium LLC will provide water service; however, each booth area must have a FOOD GRADE QUALITY hose (typically a white hose with a blue stripe).  No garden hoses will be permitted.
   - Please come prepared for hook-ups with washers, Y connectors, and at least 50 feet of hose.

16. <u>Tents:</u>
   - If you are providing your own tent, you must provide your own weights to secure the tent **(NO STAKING)**.
   - Tent Lighting – If you provide your own tent, you must also provide your own lighting. Lighting must be equipped with standard 110v. grounded Edison type plugs and adequate cord length to reach event electric service locations.  Exposed bulbs are not permitted, and all Quartz lighting must be turned off overnight at your booth.
   - Tables / Chairs – If you require tables and chairs at your booth area, you must provide them.  PSSI Stadium LLC will not be responsible for obtaining tables and chairs for you.

17. <u>Rib Coupons:</u>
   - There will be a limited number of free rib dinner coupons made for distribution by PSSI Stadium LLC.  These coupons are distributed to sponsors, radio stations, TV stations, etc. to help promote the event.
   - These coupons will be redeemed throughout the duration of the event, at no cost to the patron redeeming the coupon or PSSI Stadium LLC.

18. <u>Operating Hours:</u>
   - PSSI Stadium LLC expects your booth space to be available to the public during the entire time the festival site is open.  Failure to be open during the operating hours listed in this document is cause for removal from the current festival and all future festivals at Heinz Field.

19. <u>Site Access & Parking:</u>
   - <u>Site Access:</u>
     - Vehicle access is allowed early morning until 9:00 am on all days except Saturday, September 3rd due to the Steelers 5K.  On Saturday, September 3rd, vehicle access is allowed until 7:00 am.

  - o No vehicles are allowed after the stated times above and restocking of booths during event hours must be done by hand dolly.
- **Parking:**
  - o Free parking will not be provided for anyone.  Parking passes will be available for purchase from North Shore Parking Works through the event contract and at the rib vendors meeting before the festival opens.

20. **Wastewater Disposal:**
   - A holding tank for wastewater disposal will be within 100 ft. of all vendors; however, you are responsible for capturing all wastewater in your booth area and removing it to the holding tank.  To permit pumping of full tanks during the event, vendors must not block the tanks.  Wastewater **cannot** be dumped into the sewer grates, grease or ash containers.
   - The wastewater holding tanks are for your food operation ONLY. RV units must be dumped off-site.
   - Because wastewater tanks are dumped in the early morning hours, vendors need to dump all food wastewater at the close of business each day.

21. **Meat Deal:**
   - The official meat provider for the Miller Lite Kickoff and Music Festival is BLK Ventures LLC.  The contact person to purchase your product from is Bradley Kean.  His phone number is (614) 206-7144 and email is keanbradley@yahoo.com.

22. **Lunch Specials:**
   - On Friday afternoon only, we would like to provide lunch specials for the businesses around the area.  The times for these specials would be 12:00 Noon – 2:00 pm.
   - We have labeled this in the past as "You buy the meat, we provide the treat!" meaning a customer buys their meat and the rib vendor provides free sides.

23. **Miscellaneous Info:**
   - **Rib Vendors Pre-Event Meeting:**
     - o The rib vendor meeting will take place on Wednesday, August 31, 2022 at 6:00 pm. At this meeting, PSSI Stadium LLC will go over some basic rules of the event, set pricing for product and determine parking needs with North Shore Parking Works.
   - **Port-A-Johns:**
     - o There will be (2) port-a-johns behind the North end rib vendors as well as (2) port-a-johns behind the South end rib vendors. Each port-a-john will have a combination lock on it, to prevent general patrons from using it.  The combination will be distributed at the rib vendors meeting.
   - **Ice:**
     - o The location ice will be sold at will be determined prior to the event and the location will be distributed at the rib vendors meeting.
   - **Change Schedule:**
     - o This will be determined prior to the event and a schedule / pickup location will be distributed at the rib vendors meeting.
   - **Propane:**
     - o Vendors requiring propane must order directly from a propane supplier.  Ross Welding has been handling propane for the Kickoff Festival for several years.  Please contact Ross Welding at (724) 226-9300.

24. **Event Contacts for Vendors:**
- Rob Thompson – (412) 670-7468
- Greg Hoyer – (412) 292-5220.